# 13-534(L)

## 13-1722(Con)

*To be Argued by:*
Phillip G. Steck

**United States Court of Appeals
for the Second Circuit**

NECDET AKTAS and LISA AKTAS,

Plaintiffs – Counter-Defendants – Appellants,

-against-

MICHAEL TERRY, NORTH EAST UNDERLAYMENTS, LLC, NORTHWOODS CONCRETE, INC.

Third-Party-Defendants – Cross-Defendants – Cross-Claimaints,

JOSEPH M. CANTANUCCI, JR., GRANVILLE GLASS AND GRANITE, INC., GRANVILLE GLASS AND GRANITE OF HUDSON FALLS, INC., as SUCCESSOR in interest to GRANVILLE GLASS AND GRANITE, INC., JAMES P. LYNCH, P.E., PLLC, SCOTT HAMILTON, D/B/A/ HAMILTON PLUMBING, BRADY'S WOOD FLOORS, LLC, COUNTY OF WARREN, and PAUL PRITCHER, D/B/A HAMILTON PLUMBING

Defendants – Cross-Defendants – Counter-Claimants – Counter-Defendants

JMC DEVELOPMENT CO., INC., and STEPHEN M. JUNG D/B/A JUNG ARCHITECTURE,

Defendants – Counter-Claimants – Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**REPLY BRIEF FOR PLAINTIFF-APPELLANT**

**Cooper Erving & Savage LLP**
*Attorneys for Plaintiff-Appellant*
39 North Pearl Street
Albany, New York 12207
(518) 449-3900
Phillip G. Steck, Of Counsel

Table of Contents

Table of Contents ....................................................................................... i

Table of Authorities ................................................................................... ii

**ARGUMENT**

  **I.**   THE UNDISPUTED EVIDENCE WAS THAT THIS WAS A DESIGNBUILD CONTRACT, THE BUILDER HIRED THE ARCHITECT, AND THEREFORE, THE BUILDER IS LIABLE FOR THE ARCHITECT'S WRONGDOING ............................................1

  **II.**   ON THE EVIDENCE, THE PLAINTIFFS OWED NO DUTY TO THE BUILDER, SO THE COURT ERRED IN INSTRUCTING THE JURY ON THE LAW OF CAMPARATIVE NEGLIGENCE...... 6

  **III.**   DEFENDANTS HAD AMPLE NOTICE AND OPPORTUNITY TO INSPECT THE PREMISES, INSTEAD ENGAGED IN LEGAL GAMESMANSHIP, FAILED TO DO SO, AND THEREFORE WERE NOT ENTITLED TO A JURY INSTRUCTION CONCERNING PLAINTIFFS' ALLEGED SPOLIATION OF EVIDENCE....................................................................7

  **IV.**   THE VERDICT OF $3,500 AGAINST THE ARCHITECT STEVEN JUNG, REPRESENTING THE FEE HE WAS PAID BY JMC DEVELOPMENT FOR DRAWING UP PLANS, MUST BE SET ASIDE AS IT WAS NOT EVEN REMOTELY IN ACCORD WITH THE COURT'S AGREEMENT WITH THE PARTIES AS TO THE PROPER MEASURE OF DAMAGES ...............8

  **V.**   THE COURT'S INSTRUCTIONS TO THE JURY ON CONTRACT LAW WERE DEFECTIVE ..................................................8

Conclusion...................................................................................................9

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)(B)...................... 11

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Admiral Ins. Co. v. Joy Contrs., Inc.*, 19 N.Y.3d 448, 461 (2012) ............................9

*Babylon Assocs. v. County of Suffolk*, 101 A.D.2d 207, 215 (2d Dep't 1984) ..........9

*Brewster v. City of Poughkeepsie*, 447 F.Supp.2d 342 (S.D.N.Y. 2006) .................3

*Cipriano v. Rhode Island*, 738 F.2d 535 (1st Cir. 1984) ..........................................4

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387, 1393
   (E.D.N.Y. 1989) ...................................................................................................4

*D.A. Elia Constr. Corp. v. United States Fid. & Guar. Co.*, 1996 U.S. Dist.
   LEXIS 12403 *2 (W.D.N.Y. July 30, 1996) .......................................................4

*Duran v. Town of Cicero*, 653 F.3d 632, 643 (7th Cir. Ill. 2011)...............................3

*Eastman Mach. Co. v. United States*, 841 F.2d 469, 473-474 (2d Cir. 1988)..........4

*Henry v. Daytop Village*, 42 F.3d 89, 91 (2d Cir. N.Y. 1994)...................................6

*Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 883 (N.D. Ill. 2002)............4

*Obriecht v. Raemisch*, 517 F.3d 489 (7th Cir. 2008)................................................4

## Argument

**I.   THE UNDISPUTED EVIDENCE WAS THAT THIS WAS A DESIGN-BUILD CONTRACT, THE BUILDER HIRED THE ARCHITECT, AND THEREFORE, THE BUILDER IS LIABLE FOR THE ARCHITECT'S WRONGDOING.**

Defendant JMC begins its response by attempting to repudiate the testimony of both the builder, Cantanucci, and the architect, Jung, that it was the builder who hired the architect not the plaintiffs. There is no evidence to support any claim that plaintiffs hired the architect. Cantanucci admitted that he hired Jung, and Jung agreed.

We will begin with the testimony of the architect Jung:

Q Okay. How much were you paid for this project?
A $3500.
Q And what did that $3500 include?
A It included initial meetings with the client, construction documents and onsite observation. Sometimes I'll charge for it but typically I do it in a -- it's -- if it's something that's my responsibility, it's part of my contract.
Q Did that also include meetings or a meeting with the building inspector on site? . . .
A Yes.
Q And have you ever worked with JMC before working with them on this particular project?
A Yes, I did.
Q How many projects had you worked with JMC on?
A Six to eight. Somewhere in there.
Q And those were all before the Aktas project?
A Yes. I did those in California and we transmitted them electronically.
Q How did you first hear about the – this particular project?
A Joe called me and said I've got a project. [A293-294]

1

Architect Jung understood perfectly clearly who he was working for – JMC Development. That is the entity to whom he issued his bill dated October 21, 2008 in the amount of $3,502.25. [A-100] On November 20, 2008, after the parties' contract was signed, and after the plans were prepared, Jung wrote a letter describing the scope of work he would perform on the project in exchange for the fee he was paid. He wrote that letter to Joe Cantanucci summarizing "our phone conversation yesterday." [A-101] It undisputed that the Aktases paid JMC for the services of Jung; they did not pay Jung directly. [A-59 (testimony of Lisa Aktas); Joint Pretrial Stipulation, Dkt. # 167, "On September 18, 2008, plaintiffs paid JMC $2,500 for Jung's services."] Of course, the Aktases did meet with Cantanucci and Jung [A-312] to tell them what type of work they wanted done on the house, but that does not mean they hired the architect. It would have been very difficult for Jung to do his design without some communication from the Aktases as to the type of work they wanted.

Thus, any rational discussion of the issue on appeal must start from the standpoint that the architect was no different than any other subcontractor to the builder. This is consistent with the way Cantanucci's company, JMC, did business. JMC had no employees and subcontracted everything out. [A-311]

Under defendants' interpretation of law, in order to hold the builder liable for the actions of his subcontractors, plaintiff would specifically have to plead

2

vicarious liability against each and every subcontractor, including those which were unknown to plaintiff. Vicarious liability is a tort theory not a contract theory. *See Brewster v. City of Poughkeepsie*, 447 F.Supp.2d 342 (S.D.N.Y. 2006) (vicarious liability case cited by defendant JMC is a tort case involving sexual harassment). In contract, plaintiffs need only plead, as plaintiffs did, that the contract explicitly provided that "all work was to be performed in a professional manner." [Contract, A98; Amended Complaint, DKT # 32, ¶ 52] If the work was not performed in a professional manner, then the builder breached the contract, no matter which subcontractor did the work. This was hardly a new theory of liability. It is the most basic, simple, and fundamental claim underlying the plaintiffs' case.

Here the jury found that the architect did not perform in a professional manner, and the architect was a subcontractor. Hence the builder is liable.

The builder's liability could not arise for the architect's work, nor could such be anticipated by plaintiffs, until and unless the jury found the architect liable. The jury did its job and found that the architect did not do his. The jury need not make any further findings. *See* plaintiffs' motion for judgment notwithstanding the verdict pursuant to FRCP Rule 50(a)(2) and to amend the judgment pursuant to FRCP 59(e); *Duran v. Town of Cicero,* 653 F.3d 632, 643 (7th Cir. Ill. 2011) (use of Rule 59(e) to correct manifest error of law apparent after judgment); *Obriecht v.*

3

*Raemisch*, 517 F.3d 489 (7th Cir. 2008) (same); *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473-474 (2d Cir. 1988) (standard for assessing sufficiency of evidence to create an issue of fact for jury "is the same whether it arises in the procedural context of a motion for directed verdict or of a motion for judgment notwithstanding the verdict"); *Cipriano v. Rhode Island*, 738 F.2d 535 (1st Cir. 1984) (Rule 59(e) relief inappropriate if would undermine jury's factfinding role, but when alternative liability arose from the facts, judgment amended); *Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 883 (N.D. Ill. 2002) (59(e) properly used for alternative liability theory); *D.A. Elia Constr. Corp. v. United States Fid. & Guar. Co.*, 1996 U.S. Dist. LEXIS 12403 *2 (W.D.N.Y. July 30, 1996) ("The standard for granting a motion for judgment as a matter of law (whether referred to as such or antiquatedly as a motion for directed verdict or a motion for judgment notwithstanding the verdict or a motion jnov) is the same as that for summary judgment under FRCP 56."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387, 1393 (E.D.N.Y. 1989) ("After trial the defendant may move for what amounts to delayed summary judgment in the form of a motion for judgment notwithstanding the verdict. Rule 50, Federal Rules of Civil Procedure.").

Because plaintiffs' action against defendants is for breach of contract, the builder is liable as a matter of law for the unworkmanlike performance of its subcontractors. It is thus irrelevant whether the jury was instructed on the issue or

4

not. The jury has no power to find the builder not liable. The fact that plaintiffs sued architect Jung and engineer Lynch separately is also irrelevant. That does not absolve the builder of responsibility. The existence of an implied contract claim against those parties is useful because builders do not typically have insurance that will protect plaintiffs in the event work is done in an unprofessional or unworkmanlike manner. So it is desirable to bring additional claims against the design professionals in the event the builder cannot satisfy a judgment. Plaintiff satisfied the legal standard under New York law for bringing direct claims against both Jung the architect and Lynch the engineer, even though plaintiffs never dealt with Lynch at all. [A555-560] No appeal was taken from the trial court's ruling on this issue.

While plaintiffs believe that the jury has no appropriate role in this purely legal issue, and that instructing the jury on it would be for informational purposes only, the fact is that plaintiffs did request both in their proposed jury instructions and at trial that the jury be instructed that the builder is liable for the unprofessional work of all its subcontractors including the architect. Plaintiffs' proposed jury instructions state: "The contract makes JMC responsible for all work performed under the contract, regardless of whether the work was performed by JMC itself or any subcontractors hired by JMC, including the architect Jung and the engineer Lynch." [A-47] In post-verdict motions, plaintiffs' affidavit states:

"7. During deliberations, when the jury came back with a note that plaintiffs' counsel believed touched on this issue, plaintiffs' counsel again requested that the jury be instructed accordingly. 8. The Court denied the requests." [A-338] In their opposition to the post-verdict motions, defendants did not deny that this exchange occurred. [A-342-343] Their argument was simply that the builder is not liable for the architect's unprofessional work because of the fact that plaintiffs asserted an implied contract claim against Jung and did not plead vicarious liability, [Id.], which plaintiffs have shown do not excuse the builder from liability. The implied contract claim and the breach of contract claim are not mutually exclusive remedies, and defendants can point to no case law making them so. *See Henry v. Daytop Village*, 42 F.3d 89, 91 (2d Cir. N.Y. 1994) ("Because her claims are not inconsistent, and because the Federal Rules of Civil Procedure explicitly authorize pleading in the alternative, we hold that her second claim may not be construed as an admission against her first claim.)".

## II.   ON THE EVIDENCE, THE PLAINTIFFS OWED NO DUTY TO THE BUILDER, SO THE COURT ERRED IN INSTRUCTING THE JURY ON THE LAW OF COMPARATIVE NEGLIGENCE.

Defendants do not appear to have argued against plaintiffs' position on this issue in any way that has not been adequately addressed in plaintiffs' principal brief.

6

### III. DEFENDANTS HAD AMPLE NOTICE AND OPPORTUNITY TO INSPECT THE PREMISES, INSTEAD ENGAGED IN LEGAL GAMESMANSHIP, FAILED TO DO SO, AND THEREFORE WERE NOT ENTITLED TO A JURY INSTRUCTION CONCERNING PLAINTIFFS' ALLEGED SPOLIATION OF EVIDENCE.

Predictably, defendants' argument is that George Villar, unbeknownst to plaintiffs, was a convicted felon, so plaintiffs must have spoliated evidence. Defendants' argument amounts to legal sophistry and, thus, it should be given no credence. Furthermore, there is no evidence of any specific wrongdoing by Villar vis-à-vis JMC. In the absence of such evidence, defendants are not allowed to draw any negative inferences as to spoliation from the mere fact of his criminal conviction, see FRE 404(b)(1), as opposed to attacking his credibility due to his criminal convictions.

The letter Villar wrote to JMC advising JMC that JMC was no longer wanted on the job, which is quoted in full in plaintiff's brief [pp. 13-14] speaks for itself, does not involve any question of credibility, and does not constitute spoliation of evidence in and of itself. It does not obliterate defendants' duty to, at the very least, make some request to inspect the premises, particularly when litigation was commenced less than three months after the letter from Villar was written.

To date, defendants' have successfully played the spoliation game. Instead of showing a *bona fide* interest in inspecting the property, defendants laid in the

weeds, apparently believing they were entitled to an engraved invitation from plaintiffs. Spoliation is a doctrine of fairness. It is manifestly unfair to make the spoliation doctrine a trap for the unwary.

## IV. THE VERDICT OF $3,500 AGAINST THE ARCHITECT STEVEN JUNG, REPRESENTING THE FEE HE WAS PAID BY JMC DEVELOPMENT FOR DRAWING UP PLANS, MUST BE SET ASIDE AS IT WAS NOT EVEN REMOTELY IN ACCORD WITH THE COURT'S AGREEMENT WITH THE PARTIES AS TO THE PROPER MEASURE OF DAMAGES.

Defendants do not appear to have argued against plaintiffs' position on this issue in any way that has not been adequately addressed in plaintiffs' principal brief.

## V. THE COURT'S INSTRUCTIONS TO THE JURY ON CONTRACT LAW WERE DEFECTIVE.

Defendants' continue to confuse breach of contract with rescission. Plaintiffs were sued for breach of contract, not rescission. [Amended Complaint, DKT # 32, ¶¶ 52 ff.]

The doctrines are different and are not melded together, as defendants would have it. "In order to justify the intervention of equity to rescind a contract, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof. If rescission is based upon a breach of the contract, the breach must be 'material and willful, or, if not willful, so

substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.'" *Babylon Assocs. v. County of Suffolk*, 101 A.D.2d 207, 215 (2d Dep't 1984).

Over objection, the Court persisted in instructing the jury in accordance with the rescission standard in a case that clearly did not implicate rescission at all. Rescission imposes a greater burden on plaintiffs than should have been required. Rescission is a claim that the contract was void *ab initio*. This case was never about that. *See Admiral Ins. Co. v Joy Contrs., Inc.*, 19 N.Y.3d 448, 461 (2012).

<u>Conclusion</u>

For the foregoing reasons, this Court should reverse the judgment of the District Court and remand the matter for a new trial in accordance with the legal principles decided in this appeal, or, in the alternative, striking such portion of the judgment as imposed liability on the plaintiffs for comparative negligence and directing the entry of judgment against JMC Development for the wrongdoing of Jung Architecture.

Dated:    Albany, New York
          January 10, 2014

                        COOPER ERVING & SAVAGE LLP
                        39 North Pearl Street
                        Albany, New York 12207-2797
                        (518) 449-3900

By: _____
Phillip G. Steck

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)(B)**

The total number of words in appellant's brief inclusive of point headings, footnotes, and quotations and exclusive of pages containing the cover, table of contents, table of authorities, certificate of conformity and addendum is: 2,269.

Phillip G. Steck, Esq.